UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM HENRY BROWN,

        Petitioner,

v.                           Case No. 3:20-cv-1027-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

**ORDER**

**I. Status**

    Petitioner William Henry Brown, an inmate of the Florida penal system, initiated this action on September 9, 2020,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] Brown proceeds on an amended petition (Amended Petition; Doc. 8), filed on February 26, 2021. In the Amended Petition, Brown challenges a 2014 state court (Duval County, Florida) judgment of conviction for second-degree murder and sale or possession with intent to sell cannabis while armed. He raises eight grounds for relief. See Amended Petition at 4-20. Respondents

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

submitted a memorandum in opposition to the Amended Petition. <u>See</u> Response (Doc. 13). They also submitted exhibits. <u>See</u> Docs. 13-1 through 13-3. Brown filed a brief in reply. <u>See</u> Reply (Doc. 21). He also submitted exhibits. <u>See</u> Doc. 21-1. This action is ripe for review.

## II. Relevant Procedural History

On March 22, 2012, the State of Florida charged Brown by indictment with first-degree murder (count one) and sale or possession with intent to sell cannabis while armed (count two). Doc. 13-1 at 28-30. On March 8, 2013, Brown, with the assistance of counsel, filed a Motion for Determination of Immunity from Prosecution and Motion to Dismiss pursuant to Florida Statutes sections 776.032(1) and 776.013(3).[3] <u>Id.</u> at 88-90. Following a hearing, the trial court denied the motion. <u>Id.</u> at 95-105. Brown filed a Petition for Writ of Prohibition with the First District Court of Appeal (First DCA). <u>Id.</u> at 266-73. The State filed a response. <u>Id.</u> at 429-45. On April 22, 2014, the First DCA denied relief in a written opinion. <u>Id.</u> at 447-50.

Brown proceeded to a jury trial. Before the jury returned a verdict, on August 15, 2014, Brown entered a guilty plea to second-degree murder, a

---

[3] Section 776.032, Florida's Stand Your Ground law, provides immunity from criminal prosecution to a person who uses or threatens to use force as permitted in sections 776.012, 776.013, or 776.031.

lesser included offense of count one, and to the drug charge in count two. Id. at 144-45. On August 19, 2014, the trial court sentenced Brown to a thirty-five-year term of imprisonment as to count one and a concurrent fifteen-year term of imprisonment as to count two. Id. at 146-53.

On direct appeal, Brown, with the benefit of counsel, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). Doc. 13-2 at 1048-57. Brown subsequently filed a pro se initial brief, arguing counsel was ineffective when she: moved to dismiss the charges pursuant to section 776.013(3) (ground one); failed to object to the State's factual basis at sentencing (ground two); and failed to subpoena an eyewitness (ground three). Id. at 1059-83. He also alleged the trial court erred when it admitted the victim's statements as excited utterances (ground four). Id. Brown filed a notice of voluntary dismissal, id. at 1085-86, and on December 8, 2015, the First DCA dismissed Brown's direct appeal, id. at 1088.

On November 18, 2016, Brown filed a pro se state petition for writ of habeas corpus, alleging appellate counsel was ineffective when she failed to argue Stand Your Ground immunity pursuant to Florida Statues section 776.012(1). Id. at 1155-68. The First DCA denied the petition on the merits on March 8, 2017. Id. at 1205.

3

On September 20, 2018, Brown filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Doc. 13-3 at 4-38. In the Rule 3.850 Motion, Brown alleged: counsel was ineffective when she failed to argue Stand Your Ground immunity pursuant to section 776.012(1) (ground one); the prosecutor suppressed material, exculpatory impeachment evidence (ground two); the trial court erred when it admitted the victim's statements as excited utterances (ground three); Brown entered an involuntary plea because he did not know intent to cause death constituted an element of second-degree murder (ground four); and counsel was ineffective when she failed to impeach a witness with prior inconsistent statements (ground five). Id. Brown requested leave to amend his Rule 3.850 Motion, and on July 17, 2017, the postconviction court granted Brown's request, directing him to file an amended motion "within the prescribed timeframe under Rule 3.850(b)." Id. at 454-55. Brown failed to file an amended motion within that time period, and on January 9, 2018, the postconviction court denied relief on all grounds raised in the Rule 3.850 Motion. Id. at 456-62. The First DCA affirmed the postconviction court's denial of relief on April 30, 2019, id. at 678, and issued the mandate on May 28, 2019, id. at 681.

4

On January 10, 2018, Brown filed an amended Rule 3.850 Motion, raising as grounds one through five substantially similar claims to those raised in his Rule 3.850 Motion. Id. at 591-616. Brown also alleged: the State violated his right to due process when it obtained an indictment based on an illegally obtained confession (ground six), and the prosecutor knowingly presented or failed to correct false testimony in violation of Giglio v. United States, 405 U.S. 150 (1972) (ground seven). Id. at 616-19. On February 5, 2018, the postconviction court dismissed grounds one through five for lack of jurisdiction and grounds six and seven as untimely filed. Id. at 683-86. On April 30, 2019, the First DCA per curiam affirmed the dismissal, id. at 784, and on May 28, 2019, issued the mandate, id. at 787. Brown subsequently filed a second amended Rule 3.850 Motion on December 18, 2018, id. at 790-807, and a third amended Rule 3.850 Motion on January 9, 2019, id. at 969-86. In the second and third amended Rule 3.850 Motions, Brown raised one claim for relief, arguing he was entitled to a new Stand Your Ground immunity hearing based on an amendment to section 776.032. Id. at 794-805, 973-84. The postconviction court dismissed the second and third amended Rule 3.850 Motions, determining it lacked jurisdiction to consider them pending the appeal of the postconviction court's February 5th dismissal of

Brown's amended Rule 3.850 Motion. Id. at 1149-50. Brown appealed, and on September 9, 2019, the First DCA reversed and remanded for further proceedings, finding the postconviction court had jurisdiction to rule on Brown's second and third amended Rule 3.850 Motions "where the issue raised . . . was unrelated to the issues raised in [Brown's] prior postconviction motion." Id. at 1221. On remand, the postconviction court denied relief. Id. at 1226-29. The First DCA per curiam affirmed the denial of relief on June 23, 2020, id. at 1256, and issued the mandate on July 21, 2020, id. at 1259.

## III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834

6

F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Brown's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

7

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States;" or

(2) "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d);

Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope

of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for
> claims of state courts' erroneous legal conclusions. As
> explained by the Supreme Court in Williams v.
> Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d
> 389 (2000), § 2254(d)(1) consists of two distinct
> clauses: a "contrary to" clause and an "unreasonable
> application" clause. The "contrary to" clause allows
> for relief only "if the state court arrives at a
> conclusion opposite to that reached by [the Supreme]
> Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court
> has on a set of materially indistinguishable facts." Id.
> at 413, 120 S. Ct. at 1523 (plurality opinion). The
> "unreasonable application" clause allows for relief
> only "if the state court identifies the correct
> governing legal principle from [the Supreme] Court's
> decisions but unreasonably applies that principle to
> the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for
> claims of state courts' erroneous factual
> determinations. Section 2254(d)(2) allows federal
> courts to grant relief only if the state court's denial of
> the petitioner's claim "was based on an unreasonable
> determination of the facts in light of the evidence
> presented in the State court proceeding." 28 U.S.C. §
> 2254(d)(2). The Supreme Court has not yet defined §

> 2254(d)(2)'s "precise relationship" to § 2254(e)(1),
> which imposes a burden on the petitioner to rebut the
> state court's factual findings "by clear and convincing
> evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S.
> Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield
> v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192
> L.Ed.2d 356 (2015). Whatever that "precise
> relationship" may be, "'a state-court factual
> determination is not unreasonable merely because
> the federal habeas court would have reached a
> different conclusion in the first instance.'" Titlow, 571
> U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen,
> 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d
> 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential

review under § 2254(d) generally is limited to the record that was before the

state court that adjudicated the claim on the merits. See Cullen v. Pinholster,

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an

examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." Burt v. Titlow,

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting

10

Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for

11

> counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under <u>Strickland</u>. See <u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020); <u>Philmore v.</u>

<u>McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). The Eleventh Circuit has

instructed:

> In assessing an appellate attorney's performance, we
> are mindful that "the Sixth Amendment does not
> require appellate advocates to raise every non-
> frivolous issue." <u>Id.</u> at 1130-31.[4] Rather, an effective
> attorney will weed out weaker arguments, even
> though they may have merit. <u>See</u> <u>id.</u> at 1131. In order
> to establish prejudice, we must first review the
> merits of the omitted claim. <u>See</u> <u>id.</u> at 1132. Counsel's
> performance will be deemed prejudicial if we find
> that "the neglected claim would have a reasonable
> probability of success on appeal." <u>Id.</u>

<u>Philmore</u>, 575 F.3d at 1264. Thus, appellate counsel's performance is

prejudicial if the omitted claim would have a reasonable probability of

success on appeal. <u>Id.</u> at 1265.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation
> is a most deferential one." <u>Richter</u>, 562 U.S. at ---,
> 131 S. Ct. at 788. But "[e]stablishing that a state
> court's application of <u>Strickland</u> was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by <u>Strickland</u> and § 2254(d) are
> both highly deferential, and when the two apply in
> tandem, review is doubly so." <u>Id.</u> (citations and
> quotation marks omitted). "The question is not
> whether a federal court believes the state court's

---

[4] <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir. 1991).

> determination under the <u>Strickland</u> standard was
> incorrect but whether that determination was
> unreasonable — a substantially higher threshold."
> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct.
> 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument that
> counsel satisfied <u>Strickland</u>'s deferential standard,"
> then a federal court may not disturb a state-court
> decision denying the claim. <u>Richter</u>, 562 U.S. at ---,
> 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Grounds One and Seven

#### 1. Ground One

As Ground One, Brown alleges counsel was ineffective when she failed to assert Stand Your Ground immunity pursuant to section 776.012(1). Amended Petition at 5. According to Brown, counsel filed a Motion for

Determination of Immunity from Prosecution and Motion to Dismiss under section 776.013(3), which provides for immunity only if the person who used defensive force was not engaged in criminal activity. Id. at 4-5. He states that following a hearing, the trial court denied immunity because Brown "was engaged in [the] unlawful activity of selling drugs when he acted in self-defense." Id. at 5. Brown argues counsel should have relied on section 776.012(1), which provides for immunity even if the person who used defensive force was engaged in unlawful activity. Id. He contends if counsel had filed a motion pursuant to section 776.012(1), it would have resulted in a different outcome at the Stand Your Ground hearing. Id. at 6.

Respondents argue that the claim in Ground One is procedurally barred because when Brown entered a guilty plea, he waived all claims of ineffective assistance of counsel not related to the plea and circumstances surrounding the plea. Response at 21-22. However, "an ineffective assistance of counsel claim that goes to the voluntary nature of the defendant's plea is not waived 'simply by entering a plea' because this is contrary to Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). . . . Rather, a defendant is entitled to adequate representation while considering whether to make a voluntary plea." Martinez v. Sec'y, Fla. Dep't of Corr., 684 F. App'x

15

915, 922 (11th Cir. 2017) (internal citation omitted);[5] see Arvelo v. Sec'y, Fla. Dep't of Corr., 788 F.3d 1345, 1348 (11th Cir. 2015) (noting that "a defendant does not waive an ineffective assistance of counsel claim simply by entering a plea"); Goggins v. Sec'y, Dep't of Corr., No. 20-11033, 2022 WL 433219, at *3 (11th Cir. Feb. 14, 2022) (finding error where the district court determined a petitioner's ineffective assistance of counsel claims were outside the scope of federal habeas review because his guilty plea resulted in a complete waiver of his claims). Here, Brown raised a substantially similar claim as ground one of his Rule 3.850 Motion, where he alleged if counsel had filed a motion under section 776.012(1), a reasonable probability exists that the trial court would have granted him immunity and he "would not have pleaded guilty to second degree murder." Doc. 13-3 at 13 (emphasis omitted). He also alleged counsel's actions rendered his plea involuntary. Id. at 14-15. Liberally construed, the claim in Ground One attacks the voluntariness of Brown's guilty plea. Accordingly, the Court declines to apply the procedural bar.[6]

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[6] For the same reason, the Court will not apply the procedural bar to Grounds Two and Five as Respondents request. Response at 24-25, 38-39.

The postconviction court denied relief on ground one of his Rule 3.850

Motion, stating in pertinent part:

> The Defendant contends that counsel was ineffective for failing to argue his stand-your-ground claim under the correct statute and that, had the correct law been presented, the Court would have granted him immunity from prosecution.
>
> There are three statutes under which a defendant may claim self-defense and be granted immunity under section 776.032, Florida Statutes: namely, sections 776.012, 776.013, and 776.031, Florida Statutes. The versions [of] these statutes in effect at the time of the crime in this case, October 28, 2011, were different from the current versions. While section 776.013(3), Florida Statutes (2011), required that a person not be engaged in unlawful activity when using deadly force to protect a residence, section 776.012, Florida Statutes (2011), contained no requirement that a person using deadly force to protect himself or another from death or great bodily harm not be engaged in unlawful activity (the statute has since been amended to include this requirement). There are a number of decisions interpreting the earlier version of section 776.012 to allow a defendant to claim self-defense even where he was engaged in criminal activity at the time he resorted to deadly force. See, e.g., Garrett v. State, 148 So. 3d 466 (Fla. 1st DCA 2014); Andujar-Ruiz v. State, 205 So. 3d 803 (Fla. 2d DCA 2016).
>
> The Defendant alleges counsel was ineffective for failing to make the argument that he was not precluded from using deadly force even though, at the time of the shooting, he was engaged in a marijuana sales operation and was apparently trying to prevent

17

the theft of his product. He is correct that, under certain circumstances, he could have claimed the right to self-defense under section 776.012, Florida Statutes (2011), even while engaged in the drug trade. Counsel may arguably have been ineffective on this point.

However, the Defendant cannot demonstrate prejudice. Following the stand-your-ground hearing, the Court wrote a lengthy order denying immunity from prosecution. While it based its order in part on its finding that the Defendant was not entitled to relief because he was engaged in criminal activity, it also made the finding that, even if he was not so engaged, the Defendant failed to prove he was acting in self-defense. The Court found he was not a credible witness, but instead had changed his story numerous times and made claims at various times that he could not remember what happened. The Court concluded he had come to the scene of the crime armed and prepared for a "Wild West" shoot-out. Thus even had counsel brought up cases under section 776.012 allowing a self-defense claim in spite of his illegal activity, there is not a reasonable probability the Court would have found the Defendant to be a credible witness and granted immunity.

Id. at 457-59 (record citation omitted). The First DCA per curiam affirmed the postconviction court's denial of relief without a written opinion. Id. at 678.

To the extent that the First DCA decided the claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Brown is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Brown's claim is without merit because the record supports the postconviction court's conclusion. Under Florida's Stand Your Ground law, a defendant can assert immunity from criminal prosecution if he uses force as permitted in sections 776.012, 776.013, or 776.031. Fla. Stat. § 776.032(1) (2011). Section 776.012(1) (2011) provided that "a person is justified in the use of deadly force and does not have a duty to retreat if . . . [h]e or she reasonably believes that such force is necessary to prevent

---

[7] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony." However, section 776.013(3) (2011) specified,

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

At the time that Brown committed the offenses, if a defendant raised a claim of statutory immunity pretrial, the trial court would conduct an evidentiary hearing to "determine whether the defendant has shown by a preponderance of the evidence that the immunity attaches." Peterson v. State, 983 So. 2d 27, 29 (Fla. 1st DCA 2008).

Here, the trial court found that Brown was not entitled to immunity because he was engaged in criminal activity when he used defensive force. Doc. 13-1 at 103. However, it also determined that even if Brown was not engaged in criminal activity, he "failed to establish by a preponderance of the evidence that he was justified in using deadly force in self-defense." Id. In support of its conclusion, the trial court gave little weight to Brown's

20

testimony because he lacked credibility, noting that he "conceded on at least seven occasions during cross-examination that he lied to the police during his interrogation." Id. According to the trial court, Brown testified at the Stand Your Ground hearing that he feared for his life because Adam Holleran reached for a gun,[8] but Brown admitted he never told police that he saw Holleran reach for a gun. Id. at 104. Considering the trial court found in the alternative that even if Brown was not engaged in criminal activity, Brown did not establish entitlement to immunity, no reasonable probability exists that the trial court would have granted immunity to Brown even if counsel filed a motion to dismiss pursuant to section 776.012(1).[9] As such, Brown cannot demonstrate prejudice, and relief on the claim in ground one is due to be denied. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

---

[8] Brown testified that the shooting occurred while Holleran and the victim bought marijuana from him. Doc. 13-1 at 300-01, 315.

[9] The Court notes that in the order, the trial court referenced section 776.012(1), stating "[p]ursuant to sections 776.032(1), 776.012(1), and 776.013(3), Florida Statutes, [Brown] seeks statutory immunity from prosecution based on justified use of force in self-defense, and requests that his pending charges be dismissed." Doc. 13-1 at 96.

## 2. Ground Seven

In Ground Seven, Brown raises a similar claim. He contends appellate counsel was ineffective when she failed to argue that the trial court should have granted immunity to Brown under section 776.012(1). Amended Petition at 17-18. Specifically, Brown alleges that counsel filed a petition for writ of prohibition, arguing that the trial court erred when it denied the defense's Motion for Determination of Immunity from Prosecution and Motion to Dismiss filed pursuant to section 776.013(3). Id. at 17. According to Brown, counsel should have asserted immunity under section 776.012(1), which provided for the defensive use of force even if a person is engaged in criminal activity. Id. at 18. Brown states if counsel had made this argument, the First DCA would have granted the petition for writ of prohibition. Id. Brown raised this issue in a state petition for writ of habeas corpus, Doc. 13-2 at 1161-65, and the First DCA denied Brown's petition on the merits, id. at 1205.

As there is a qualifying state court decision, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable

22

application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Brown is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Brown's claim is without merit. For the reasons detailed in Ground One, he fails to establish prejudice. The trial court did not find Brown to be a credible witness. According to the trial court, Brown admitted on multiple occasions during cross-examination that he lied to law enforcement. Doc. 13-2 at 103. The trial court also found Brown gave conflicting testimony about his relationship with the victim and whether he saw Holleran reach for a gun. Id. at 104. Indeed, the record supports the trial court's findings. Brown admitted that his testimony at the Stand Your Ground hearing differed from the version of events that he relayed to law enforcement. Id. at 324-25, 331-32, 396-97. Most notably, Brown admitted that he lied to law enforcement about shooting the victim. Id. at 391-92. On cross-examination, the State also impeached Brown about text messages that he sent to an acquaintance after the shooting, in which he described pouring bleach on his hands. Id. at 382-83. Although Brown was the only witness at

23

the Stand Your Ground hearing, "[t]he mere fact that [] testimony appears 'uncontradicted' does not necessarily make it believable." <u>Lewis v. State</u>, 979 So. 2d 1197, 1200 (Fla. 4th DCA 2008). Brown had the burden to prove immunity by a preponderance of the evidence, and the trial court determined in the alternative that he did not carry his burden. Because the evidence supports the trial court's determination, no reasonable probability exists that the First DCA would have granted a writ of prohibition if counsel had argued immunity under section 776.012(1). Accordingly, Brown is not entitled to federal habeas relief on the claim in Ground Seven.

## B. Ground Two

Next, Brown contends counsel was ineffective when she failed to properly argue that the trial court should admit the victim's statement to Brian Cruz based on the "rule of completeness." Amended Petition at 7. He alleges counsel proffered cross-examination of Cruz, during which he testified that the victim called him and stated "They shot me . . . Adam Holleran and Pez[10] got into it . . . I'm going to die." <u>Id.</u> at 8 (internal quotation marks omitted). According to Brown, counsel erroneously argued that the trial court should admit the statement under the rule of completeness because the State

---

[10] Testimony at trial established Brown's nickname was Pez. Doc. 13-2 at 379, 861.

had already elicited from Cruz part of the victim's statement on direct examination. Id. Rather, Brown maintains the State had only elicited the victim's statement to Holleran, not Cruz. Id. Brown asserts if counsel had "properly argued under rule of completeness that the prosecutor had already introduced to the [j]ury statements made by [the victim] through [] Holleran," the trial court would have admitted the victim's statements to Cruz and Brown would not have pled guilty. Id.

The Court finds Brown did not exhaust the claim raised in Ground Two. Therefore, his claim is procedurally barred for purposes of federal habeas review. Because any future attempt to exhaust it would be futile, the claim is procedurally defaulted. In an effort to avoid the bar, Brown cites Martinez v. Ryan, 566 U.S. 1 (2012), and argues that his lack of postconviction counsel constitutes cause and prejudice to overcome the procedural bar. Amended Petition at 21. The Eleventh Circuit has explained the holding of Martinez as follows:

> In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. 566 U.S. at 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1)

25

state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. Id. at 14, 132 S.Ct. at 1318; see also Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014) (setting forth the Martinez requirements).

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is substantial if the petitioner demonstrates it "has some merit." Martinez, 566 U.S. at 14.

Considering the record, the Court determines Brown has not shown that the underlying ineffective assistance of counsel claim is substantial. The rule of completeness is codified in Florida Statutes section 90.108(1), which provides:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement that in fairness ought to be considered contemporaneously. An adverse party is not bound by evidence introduced under this section.

26

Florida courts have applied the rule to the admission of testimony. <u>Reese v. State</u>, 694 So. 2d 678, 683 (Fla. 1997). The purpose of the rule "is to avoid the potential for creating misleading impressions by taking statements out of context." <u>Pulcini v. State</u>, 41 So. 3d 338, 348 (Fla. 4th DCA 2010). Admission of other statements is subject to a judicial determination that they "in fairness ought to be considered contemporaneously with the introduction of the partial statement." <u>Larzelere v. State</u>, 676 So. 2d 394, 402 (Fla. 1996) (quotation marks and citation omitted). "General unreliability of inadmissible evidence should be one of the court's considerations in determining whether fairness requires admission." <u>Jordan v. State</u>, 694 So. 2d 708, 712 (Fla. 1997).

Here, on direct examination, Holleran testified that he overheard the victim's telephone call to Matthew Webber, during which the victim yelled "this M.F.'er just shot me. This – he just shot me. I can't believe he just shot me." Doc. 13-2 at 368. Cruz subsequently testified that he called the victim after the shooting. <u>Id.</u> at 879. On cross-examination, counsel proffered the following exchange:

> Q    Mr. – Mr. Cruz, during that conversation with Mr. Register [the victim] when you asked him what happened, he said to you they shot me, isn't that right?
>
> A    Yes.

27

> Q    And when you asked him who, he said to you
>       Adam Holleran and Pez got into it, isn't that
>       right?
>
> A    No. He said – he said they shot me. He didn't
>       say exactly – he said they.
>
>       . . . .
>
> Q    And isn't it true, sir, that when you spoke with
>       him on that day immediately after the shooting
>       he said to you Adam Holleran and Pez got into
>       it right before he said to you I'm going to die?
>
> A    Yes.

Id. at 898-99. Based on the record, counsel did not perform deficiently when she failed to argue that the trial court should admit the Cruz statement under the rule of completeness because the State had already presented the Holleran statement. The Cruz and Holleran statements occurred in separate telephone calls from the victim to two different people. As such, the Holleran statement by itself did not create a misleading impression.

In addition, the trial court found the Cruz statement to be unreliable. Counsel attempted to argue the admissibility of the Cruz statement as a dying declaration or an excited utterance. However, in evaluating its admissibility under those exceptions, the trial court noted that the victim made multiple, conflicting statements after the shooting but before his death.

28

The victim initially told law enforcement at the scene that an unknown person robbed him of $5. Doc. 13-2 at 909, 919. After approximately eight minutes, the victim made the Cruz statement. Id. at 920-21. The trial court determined it would not admit the statement because it lacked reliability. Id. at 922-23. Therefore, the trial court likely would not have admitted the Cruz statement even if counsel had made the proposed argument. See Jordan, 694 So. 2d at 712. Counsel did not perform deficiently when she failed to make a meritless argument. See Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). For these same reasons, Brown has not shown any resulting prejudice. Because Brown can show neither deficient performance nor prejudice, the Court finds that his claim is not substantial such that his failure to exhaust it should be excused under Martinez. Accordingly, Brown is not entitled to federal habeas relief on the claim in Ground Two.

## C. Ground Three

In Ground Three, Brown alleges the trial court erred when it failed to admit the victim's statements to Cruz. Amended Petition at 9. According to Brown, because the trial court admitted the victim's statement to Holleran, it

29

should have admitted the victim's statements to Cruz under the rule of completeness. Id. at 9-10. He argues the statement to Holleran by itself "effectively distort[ed] the meaning of the statement or exclude[ed] the information substantially exculpatory to [Brown]." Id. at 10.

Brown raised a substantially similar claim as ground three of his Rule 3.850 Motion. Doc. 13-3 at 26-30. The postconviction court denied relief, stating:

> The Defendant asserts the Court committed a fundamental error and abused its discretion in failing to admit the recording of the victim's last phone call. This is a matter which could and should have been raised on direct appeal and it is not cognizable in post-conviction proceedings.

Id. at 459. The First DCA per curiam affirmed the postconviction court's denial of relief without a written opinion. Id. at 678.

Rule 3.850 "does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence." Fla. R. Crim. P. 3.850(c). Claims of trial court error are not cognizable in motions for postconviction relief. See McCrae v. State, 437 So. 2d 1388, 1390 (Fla. 1983). The Court finds the postconviction court's application of the procedural bar is an independent and adequate state ground. See LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d

30

1237, 1260 n.25 (11th Cir. 2005) (noting the court "has already concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under the applicable law."). Therefore, the claim is procedurally barred on federal habeas review. Because any future attempt to exhaust it would be futile, the claim is procedurally defaulted. Brown has demonstrated neither cause and prejudice to excuse his lack of exhaustion nor a fundamental miscarriage of justice. As such, the claim in Ground Three is due to be denied as procedurally barred.

Nevertheless, even if the claim was not procedurally barred, it is still without merit. As the Court determined in Ground Two, the Holleran statement by itself did not create a misleading impression; therefore, the trial court did not err when it declined to admit the Cruz statement under the rule of completeness. Accordingly, Brown is not entitled to relief on the claim in Ground Three.

### D. Ground Four

As Ground Four, Brown asserts he entered an involuntary guilty plea because he did not know that intent to cause death was an element of second-degree murder. Amended Petition at 11. He alleges that before he entered a

guilty plea, counsel misadvised him that intent to cause death was not an element of second-degree murder. Id.

Brown raised a substantially similar claim as ground four of his Rule 3.850 Motion. Doc. 13-3 at 30-33. The postconviction court denied relief, stating in pertinent part:

> The Defendant contends his plea was involuntary because he was not correctly advised about the elements of second degree murder. He claims the jury instruction given at his trial for second degree murder stated, "[I]t is not necessary for the State to prove the Defendant intended to cause death." He states that counsel did not correct this "misinformation" before he entered his plea, rendering the plea unintelligent and involuntary.
>
> He is incorrect about the nature of second degree murder. The crime is defined in section 782.04(2), Florida Statutes (2011):
>
> > (2) The unlawful killing of a human being, when perpetrated by an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree.
>
> The intent to cause the death of the victim is not an element of the crime and the jury instruction was correct. Counsel committed no error on this point.

Id. at 460. The First DCA per curiam affirmed the postconviction court's denial of relief without a written opinion. Id. at 678.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Brown is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Brown's claim is without merit. Under Florida law, "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree . . . ." Fla. Stat. § 782.04(2) (2011) (emphasis added). Intent to cause death is not an element of second-degree murder. See Fla. Std. Jury Instr. (Crim.) 7.4 "(In order to

convict of Second Degree Murder, it is not necessary for the State to prove the defendant had an intent to cause death"). Counsel did not misadvise Brown; therefore, his plea was not involuntary. As such, Brown is not entitled to relief on the claim in Ground Four.

### E. Ground Five

In Ground Five, Brown argues counsel was ineffective when she failed to impeach Judy Glendenning, the victim's mother, with a prior inconsistent statement. Amended Petition at 13. He asserts Glendenning denied on cross-examination that she told law enforcement that the victim began selling marijuana when he lost his job. Id. According to Brown, he asked counsel to impeach Glendenning with a written report from Detective Carl Rogers, but counsel stated she could not impeach the victim's mother. Id. Brown maintains if counsel had impeached Glendenning, he would not have pled guilty "but he would have insisted on waiting for the jury to reach a verdict." Id. at 14.

Brown raised a substantially similar claim as ground five of his Rule 3.850 Motion. Doc. 13-3 at 33-36. The postconviction court denied relief, stating in pertinent part:

> The Defendant alleges counsel was ineffective
> for failing to adequately impeach a witness with prior

34

inconsistent statements. During the State's case, the victim's mother, Judy Glendenning, testified about her son. The Defendant claims she lied when she testified that her son did not use or sell drugs and asserts counsel should have impeached her with her prior statement to a police detective that she knew her son was selling marijuana.

Counsel did ask her about her prior statement to the detective, but she denied telling the detective her son sold drugs. The only way for counsel to impeach on this point would have been to call the detective as a witness during the defense's case. The written report was hearsay and could not have been admitted into evidence without the detective's testimony. At the close of the State's case, defense counsel announced she would not be calling any witnesses; the Defendant said he was in agreement with this decision, and was satisfied with counsel's cross-examination of the State's witnesses.

And, importantly, the evidence Glendenning gave was not particularly damaging to the Defendant or critical to the State's case. The prosecutor wanted to have her testify about her son's disability, in order to discredit the Defendant's claim of self-defense. The Court disallowed this, finding it might be relevant on rebuttal if the Defendant did testify but that it was premature. Glendenning did not see the shooting or have any other evidence connecting the Defendant to the crime, so impeaching her would have done little to discredit the State's case. There is no reasonable probability that impeaching Glendenning further would have altered the outcome of the trial, had the Defendant elected to wait for the jury verdict rather than enter a plea.

Id. at 460-61 (record citations omitted). The First DCA per curiam affirmed the postconviction court's denial of relief without a written opinion. Id. at 678.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Brown is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Brown's claim is without merit because the record supports the postconviction court's conclusion. The State called Glendenning to testify about the victim's disability to rebut the defense's anticipated self-defense argument. Doc. 13-2 at 314-15. The trial court did not permit her to testify on that subject during the State's case-in-chief. Id. at 319-20. Instead, Glendenning testified about the victim's place of employment, vehicle, and

36

cell phone number. <u>Id.</u> at 334-36. She also identified his personal effects. <u>Id.</u> 343-45. Because Glendenning did not provide critical testimony about the shooting or the events surrounding it, the Court finds counsel did not perform deficiently when he failed to impeach her. Given the record, Brown fails to demonstrate "no competent counsel would have taken the action that his counsel did take." <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000). Therefore, Brown is not entitled to federal habeas relief on the claim in Ground Five.

## F. Ground Six

Next, Brown alleges that the state court violated his right to due process when it denied him access to grand jury testimony from Detective Roger Prendergast. Amended Petition at 15. He maintains Detective Prendergast violated his right to counsel and privilege against self-incrimination when Detective Prendergast obtained a confession from him. <u>Id.</u> at 15. Brown asserts that even though the trial court suppressed the confession, "there is a strong likelihood that Detective Prendergast used the illegal confession to obtain a Grand Jury Indictment against [him]." <u>Id.</u> at 16. Therefore, he argues the indictment is defective as "fruit of the poisonous tree." <u>Id.</u> According to Brown, he filed a motion on April 18, 2016, requesting

a transcript of the testimony, but the state court denied his request because no good cause existed to grant postconviction discovery. <u>Id.</u> at 15-16.

Brown raised a substantially similar claim as ground six of his amended Rule 3.850 Motion. Doc. 13-3 at 616-17. The postconviction court dismissed the claim as untimely, stating in pertinent part:

> Ground Six is a new claim regarding police misconduct in obtaining statements from the Defendant. The time for filing new claims expired on December 8, 2017. Further, the Defendant admits counsel filed a motion to suppress but the Court denied it. He does not allege ineffective assistance of counsel, but court error, a matter which should have been addressed on direct appeal and is not cognizable in post-conviction proceedings.

<u>Id.</u> at 684-85. The First DCA per curiam affirmed the postconviction court's dismissal without a written opinion. <u>Id.</u> at 784.

Under Rule 3.850(b), a postconviction motion cannot be filed more than two years after a movant's judgment and sentence become final. A court need not consider new claims for relief contained in an amendment unless the amendment is filed within the two-year time limitation. Fla. R. Crim. P. 3.850(e). Here, the First DCA dismissed Brown's direct appeal on December 8, 2015. Doc. 13-3 at 1088; <u>see</u> <u>Silver v. State</u>, 964 So. 2d 180, 180 (Fla. 1st DCA 2007) ("The appellant's conviction did not become final until after this

38

Court relinquished jurisdiction . . . by issuing an order granting the appellant's motion to voluntarily dismiss the direct appeal."). Brown did not file his amended Rule 3.850 Motion until January 10, 2018. Doc. 13-3 at 591-621. The postconviction court determined that Brown raised this new claim for relief in ground six, and as such, it was untimely filed. Id. at 684-85. The Court finds the postconviction court's application of the procedural bar is an independent and adequate state ground. See LeCroy, 421 F.3d at 1260. Therefore, the claim is procedurally barred on federal habeas review. Because any future attempt to exhaust it would be futile, the claim is procedurally defaulted. Brown has demonstrated neither cause and prejudice to excuse his lack of exhaustion nor a fundamental miscarriage of justice. Accordingly, relief on the claim in Ground Six is due to be denied as procedurally barred.

Nevertheless, even assuming the claim was not procedurally barred, it is still without merit. To the extent Brown argues the state court erred when it denied his motion for grand jury testimony based on its finding that no good cause existed to engage in postconviction discovery, the Eleventh Circuit "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief." Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009) (citations omitted). "The reasoning behind this well-

established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment — i.e., the conviction itself — and thus habeas relief is not an appropriate remedy." Id. (citations and emphasis omitted); Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006); Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) ("Neither the state court's failure to hold a hearing on petitioner's 3.850 motion nor its failure to attach the relevant portions of the record in any way undermines the validity of petitioner's conviction. Because [the] claim[] goes to issues unrelated to the cause of petitioner's detention, it does not state a basis for habeas relief.") (citations omitted). Here, Brown challenges a defect in the state postconviction process. Therefore, he does not present a claim cognizable in a federal habeas petition, and he is not entitled to relief.

If Brown challenges the sufficiency of the indictment, his claim still does not have merit. A defective indictment claim is cognizable on federal habeas review only when the charging document is so deficient that it deprives the convicting court of jurisdiction. DeBenedictis v. Wainwright, 674 F.2d 841, 842 (11th Cir. 1982). Here, the indictment included Brown's name and described the times and locations of the offenses. Doc. 13-1 at 28. It

stated the statutory basis for each count and set forth the elements of the charges. Id. The indictment was not so deficient that it deprived the trial court of jurisdiction. See DeBenedictis 674 F.2d at 842. Accordingly, Brown is not entitled to federal habeas relief on the claim in Ground Six.

## G. Ground Eight

Lastly, Brown contends the prosecutor violated Giglio[11] when she knowingly presented and failed to correct false testimony from Holleran. Amended Petition at 19. He alleges Holleran testified at trial that he was not at the scene when the shooting occurred. Id. However, Brown argues Holleran testified falsely because the victim made a telephone call to Cruz during which he stated "They shot me . . . Adam Holleran and [P]ez got into it . . . I'm going to die." Id.

Brown raised a substantially similar claim as ground seven of his amended Rule 3.850 Motion. Doc. 13-3 at 617-19. The postconviction court dismissed the claim as untimely filed, stating in pertinent part:

> Ground Seven is similarly a new claim. The Defendant asserts a Giglio violation on the part of the prosecutor. He does not allege newly discovered evidence on this claim and gives no reason why he could not have raised the claim in a timely manner.

---

[11] Giglio v. United States, 405 U.S. 150 (1972).

Id. at 685. The First DCA per curiam affirmed the postconviction court's dismissal without a written opinion. Id. at 784. The Court finds the postconviction court's application of the state law procedural bar is an independent and adequate state ground for denial of relief on this claim. See LeCroy, 421 F.3d at 1260. Therefore, the claim is procedurally barred on federal habeas review. Because any future attempt to exhaust it would be futile, the claim is procedurally defaulted. Brown has demonstrated neither cause and prejudice to excuse his lack of exhaustion nor a fundamental miscarriage of justice. Accordingly, relief on the claim in Ground Eight is due to be denied as procedurally barred.

Nevertheless, even assuming the claim was not procedurally barred, it is still without merit. To establish a Giglio violation, a petitioner "must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336, 1348 (11th Cir. 2011) (quotation marks and ellipsis omitted). Mere inconsistency in testimony is insufficient to establish a Giglio claim. United States v. Stein, 846 F.3d 1135, 1149 (11th Cir. 2017). Here, Brown fails to

demonstrate that the prosecutor knowingly presented false testimony. The fact that two prosecution witnesses, Holleran and Cruz, presented two conflicting versions of events without more does not establish a <u>Giglio</u> violation. <u>See</u> <u>United States v. Gibbs</u>, 662 F.2d 728, 730 (11th Cir. 1981) ("Though knowing prosecutorial use of false evidence or perjured testimony violates due process . . . it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements."). Brown has not provided any additional facts or evidence to support his claim; therefore, he has failed to establish a <u>Giglio</u> violation. Accordingly, he is not entitled to relief on the claim in Ground Eight.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Brown seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Brown "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the

issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Amended Petition (Doc. 8) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

44

3.      If Brown appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of May, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 4/19
c:      William Henry Brown, #148952
        Counsel of record

45